# EXHIBIT A

## IN THE COURT OF COMMON PLEAS
## OF SANDUSKY COUNTY, OHIO

| | |
|---|---|
| **TIM LAGROU, Executor of the Estate of Christina Lagrou, Deceased, and as parent and next friend of Hayden Lagrou, a minor** 2143 Croghan Street Fremont, Ohio 43420, | Case No. 13cv306 |
| | Judge **Judge John P. Dewey** |
| and | **COMPLAINT, INCLUDING CLASS ACTION CLAIMS PURSUANT TO CIV. R. 23, WITH JURY DEMAND ENDORSED HEREON** |
| **MARK GILL, Individually and as parent and next friend of AUSTIN GILL, ASHTYN GILL, and ALEX GILL, minors** 1750 County Road 181 Green Springs, Ohio 44836, | |
| and | |
| **GAIL GILL, Individually and as parent and next friend of AUSTIN GILL, ASHTYN GILL, and ALEX GILL, minors** 314 Spring Avenue Clyde, Ohio 43410, | |
| and | |
| **MELONEY GILL, Individually and as parent and next friend of MCKENNA STRAYER, and HUDSON STRAYER, minors** 1750 County Road 181 Green Springs, Ohio 44836, | |
| and | |
| **MARIAH STRAYER** 1750 County Road 181 Green Springs, Ohio 44836, | |
| and | |
| **SAM STRAYER** 1750 County Road 181 Green Springs, Ohio 44836, | |
| and | |

**ADYSAN GILL**                                )
1173 South Main Street, Unit 401
Clyde, Ohio 43410,                             )

and                                            )

**ABIGAIL GILL**                               )
1750 County Road 181
Green Springs, Ohio 44836,                     )

          Plaintiffs,      )

**vs.**                                        )

**WHIRLPOOL CORPORATION**                      )
**c/o CSC-Lawyers Incorporating Services**
**(Corporation Service Company), Statutory**   )
**Agent,**
50 West Broad Street, Suite 1800               )
Columbus, Ohio 43215

                                           )

and                                            )

                                           )

**GRIST MILL CREEK, LLC., Jonathan W.**
**Abdoo, Statutory Agent,**                    )
8 Knobby Drive,
Fremont, Ohio 43420                            )

and                                            )

**JOHN DOE TRUCKING COMPANY**                  )
Address Unknown,
                                           )

and                                            )

                                           )

**JOHN DOE WASTE REMOVAL**
**COMPANY**                                    )
Address Unknown,
                                           )

and                                            )

                                           )

**JOHN DOE CORPORATION**                       )
Address Unknown,
                                           )

and                                            )

**JOHN DOE CORPORATION 1**
Address Unknown,

        Defendants.

        **********************************

    Plaintiffs, as named plaintiffs on behalf of themselves and all other members of the class of

persons defined herein, state and allege the following:

## PARTIES

1. Named plaintiff Tim Lagrou is a natural person residing in Fremont, Sandusky County, Ohio.

   Mr. Lagrou was appointed Administrator of the Estate of Christina Lagrou, deceased, by the

   Sandusky County Probate Court on October 23, 2006 in Case No. 20061326 and reappointed

   under the same case number on March 26, 2013. He brings this wrongful death action as

   personal representative for the exclusive benefit of the surviving spouse, child, parents, and

   other next of kin of the deceased. He also brings an individual claim on behalf of his minor

   child, Hayden Lagrou.

2. Decedent Christina Lagrou used the property located at the intersection of County Roads 187

   and 181, formerly known as Whirlpool Park (hereafter, "Whirlpool Park") for its outdoor

   recreational activities since she was born in 1983. Decedent was born and raised within 1500

   feet of Whirlpool Park. Decedent's mother used the park prior to and during the time she

   was pregnant with decedent. Decedent died at age 23 from Large Cell Lymphoma as a result

   of exposure to toxic manufacturing chemicals which defendants dumped at Whirlpool Park.

3. Named plaintiff Hayden Lagrou is the minor child of Tim and the late Christina Lagrou who

   was exposed to toxic manufacturing chemicals which defendants dumped at Whirlpool Park

   through his mother, *in utero*.

4. Named plaintiff Mark Gill is a natural person residing in Green Springs, Sandusky County,

Ohio. Mr. Gill has lived within 1500 feet of Whirlpool Park since 1988. Mr. Gill was born in Green Springs and has used Whirlpool Park for its recreational opportunities including a swimming pool, picnic shelter, basketball courts, tennis court, pond, and other outdoor activities since 1970. Austin, Ashtyn, and Alex are his minor children, and have also used Whirlpool Park for recreational purposes since birth.

5. Named plaintiff Gail Gill is a natural person residing in Green Springs, Sandusky County, Ohio. Ms. Gill owned property and lived within 1500 feet of Whirlpool Park from 1986 until 2009. Ms. Gill used Whirlpool Park for recreational purposes since 1970. Austin, Ashtyn, and Alex are her minor children.

6. Named plaintiff Alex Gill is the minor child of Mark and Gail Gill. Alex has suffered neurological damage as a result of exposure and *in utero* exposure to toxic manufacturing chemicals which defendants dumped at Whirlpool Park.

7. Named plaintiff Melanie Gill is a natural person residing in Green Springs, Sandusky County, Ohio. Ms. Gill lives and has owned property within 1500 feet of Whirlpool Park since 2011. Ms. Gill has used Whirlpool Park for recreational purposes since 1970. McKenna and Hudson are her minor children, and have also used Whirlpool Park for recreational purposes since birth.

8. Named plaintiff Mariah Strayer is a natural person residing in Green Springs, Sandusky County, Ohio. Ms. Strayer has lived within 1500 feet of Whirlpool Park and used the park for recreational purposes since she was born in 1991.

9. Named plaintiff Sam Strayer is a natural person residing in Green Springs, Sandusky County, Ohio. Mr. Strayer has lived within 1500 feet of Whirlpool Park and used the park for recreational purposes since he was born in 1993.

10. Named plaintiff Adysan Gill is a natural person residing in Green Springs, Sandusky County,

Ohio. Ms. Gill has lived within 1500 feet of Whirlpool Park and used the park for recreational purposes since she was born in 1992.

11. Named plaintiff Abigail Gill is a natural person residing in Green Springs, Sandusky County, Ohio. Ms. Gill has lived within 1500 feet of Whirlpool Park and used the park for recreational purposes since she was born in 1995.

12. Defendant Whirlpool Corporation, or its predecessors, is a foreign corporation which manufactures home appliances in Clyde, Sandusky County, Ohio, approximately six (6) miles from Whirlpool Park and the plaintiffs' homes. Defendant Whirlpool owned Whirlpool Park for fifty five (55) years, from 1953-2008. The United States Environmental Protection Agency released a report showing that, at some time during Whirlpool's ownership of the property, dumping of a toxic chemical sludge which included polychlorinated biphenyls occurred at Whirlpool Park.

13. Defendant Grist Mill Creek, LLC is a Limited Liability Company registered in the State of Ohio. Grist Mill Creek, LLC purchased the Whirlpool Park property in 2008 and is the current owner of said property in Green Springs, Sandusky County, Ohio.

14. Defendants John Doe Trucking Company, John Doe Waste Removal Company, and John Doe Corporation, and John Doe Corporation 1 are companies or businesses which contributed to or participated in dumping of toxic materials at Whirlpool Park or other locations within the geographic region of the cancer cluster as later defined but which are currently unknown to the plaintiffs and cannot be ascertained with reasonable diligence as the information regarding their names and addresses are possessed by defendant Whirlpool Corporation or other presently unknown entities.

5

**FACTS**

15. Plaintiffs hereby incorporate paragraphs one (1) through fourteen (14) of this Complaint as if fully rewritten herein.

16. The property located at the intersection of County Roads 187 and 181, formerly known as Whirlpool Park, was owned and operated by the Whirlpool Corporation as a recreational area for employees and members of the public from the 1950s until it was sold in 2008.

17. Whirlpool Park consisted of a picnic shelter, an in-ground outdoor pool, basketball court, tennis court, volleyball court, creek, pond, and other outdoor recreational amenities.

18. This park was widely used by generations of citizens of Clyde, Green Springs, and Sandusky County for its recreational opportunities.

19. Grist Mill Creek flows north through Whirlpool Park to its confluence with Green Creek, which flows north to Muddy Creek Bay and Lake Erie.

20. The pool at Whirlpool Park was filled using water from Grist Mill Creek which flows north past the basketball courts and toxic sludge dump site in the southeastern corner of the park toward the pool.

21. Beginning in the winter of 2005 lasting into the spring of 2006 the Sandusky County Health Department ("SCHD") reports that it began to receive telephone calls from concerned residents regarding a large number of childhood and young adult cancer cases in Sandusky County.

22. The large volume of calls regarding high childhood and young adult cancer rates caused SCHD to contact the Ohio Department of Health ("ODH") to request a review of the large number of cancer cases in Sandusky County, particularly the Clyde and Green Creek Township regions. These agencies coordinated on the preliminary investigation which also included private consultation with some of the affected families beginning in June 2006.

6

23. In the spring of 2007 ODH and SCHD completed an analysis of reported increased cancer cases among residents from 0-19 years of age in Clyde and Green Creek Township for an eleven (11) year time period (1996-2006). This analysis performed by ODH and SCHD revealed a higher number of childhood cancers than expected (10 cases observed; 5.32 expected). Particular cancers of the brain and central nervous system were found to be higher than the number of expected cases (4 cases observed; 0.92 expected).[1]

24. In response to the ODH and SCHD assessment of the high cancer rates, a follow-up assessment titled, "Investigation of Potential Clustering of Invasive Cancers among Children, Adolescents and Young Adults in Sandusky County, Ohio, 1996-2006," was conducted by the Comprehensive Cancer Center and James Cancer Hospital and Solove Research Institute at The Ohio State University, in partnership with the Ohio Cancer Incidence Surveillance System and the Comprehensive Cancer Program at the ODH to determine whether there was clustering of invasive cancers in Sandusky County during the years 1996-2006. The conclusions of this report, using four different methods of analysis, show cancer clustering in the northeastern portion of Sandusky County extending into southeastern Ottawa County and northwestern Erie County with a radius of 7.25 miles.

25. In March of 2008, due to the findings of the ODH and SCHD in addition to concerns regarding chemical contaminants in the local environment, the Ohio Environmental Protection Agency ("Ohio EPA") started environmental monitoring in Clyde, Ohio.

26. On October 30, 2009 the Ohio EPA and ODH identified 14 sites for investigation in a study titled, "Childhood Cancer among Residents of Eastern Sandusky County." Over the next year, the Ohio EPA investigated these 14 sites. No significant findings were made.

---

1 Ohio Department of Health. *Health Consultation: Evaluation of Ohio EPA Soil Sampling in Support of the Clyde and Eastern Sandusky County Childhood Cancer Investigation.* Health Assessment Section, July 28, 2011.

Coinciding with the investigation of these sites ODH and U.S. Environmental Protection Agency ("U.S. EPA") established a telephone hotline. The hotline provided a method for individuals in the community to inform the U.S. EPA of potential dumpsites in the area.

27. On 14, November 2012 a report was released by the U.S. EPA. The report was prepared by Weston Solutions Inc. for the U.S. EPA. The report is titled, "Site Assessment Report for the Whirlpool Park Site Green Springs, Sandusky County, Ohio." The site assessment of Whirlpool Park was performed due to a complaint received on the U.S. EPA and ODH hotline which included information that the Whirlpool Corporation filled in the area surrounding and under the basketball court in the southeast corner of Whirlpool Park with black sludge-like material.

28. Six soil samples were taken from Whirlpool Park for the site assessment. The assessment concluded that Whirlpool Park has a presence of polychlorinated biphenyls ("PCBs") and total metals in the subsurface soil at levels exceeding the U.S. EPA Regional Screening Levels ("RSL") for residential properties and that PCBs were present at levels exceeding the U.S. EPA requirements for PCB spill clean up. Two of the soil borings revealed a "9.5-foot layer of mottled gray and black sludge fill material with a petroleum odor" under 0.5 feet of top soil.

29. Defendant Whirlpool Corporation owned Whirlpool Park from 1953 until 2008 when it was sold to defendant Grist Mill Creek, LLC.

30. Defendant Grist Mill Creek, LLC continues to hold the property which contains a toxic chemical dump site which they have failed to decontaminate.

31. Defendant Whirlpool Corporation had a duty of ordinary care to its neighbors, including the plaintiffs, which it breached by dumping toxic materials at Whirlpool Park without designating or disclosing the site.

8

32. Defendant Whirlpool Corporation either knew or should have known that dumping or permitting toxic materials at Whirlpool Park would injure its neighbors, including the plaintiffs, and either recklessly or intentionally did so anyway.

33. Defendant Grist Mill Creek, LLC had a duty of ordinary care to its neighbors, including the plaintiffs, which it breached by permitting toxic materials to remain at Whirlpool Park.

34. Defendant Grist Mill Creek, LLC either knew or should have known that permitting toxic materials to remain at Whirlpool Park would injure its neighbors, including the plaintiffs, and either recklessly or intentionally did so anyway.

35. Defendants John Doe Trucking Company, John Doe Waste Removal Company, John Doe Corporation, and John Doe Corporation 1 had a duty of ordinary care to the neighbors of Whirlpool Park and other sites within the geographic region as defined in paragraph 24, above, including the plaintiffs, which they breached by dumping or assisting others to dump toxic materials at Whirlpool Park or other locations.

36. Defendants John Doe Trucking Company, John Doe Waste Removal Company, John Doe Corporation, and John Doe Corporation 1 either knew or should have known that dumping toxic materials at Whirlpool Park or other locations would injure its neighbors, including the plaintiffs, and either recklessly or intentionally did so anyway.

37. Due to the causation of the myriad injuries and damage contained in the claims herein having occurred at various times since approximately 1953, many of these claims would be barred by the applicable statutes of limitation if the causation and perpetrators had been previously known; however, these statutes have been tolled because plaintiffs only recently discovered the facts and their claims due to the defendants willful and deliberate failure to disclose and intentional concealment of the existence of its known toxic dump site at Whirlpool Park or other locations.

9

38. The named plaintiffs and the class they represent only discovered upon the release of the U.S. EPA report on 14, November 2012 that wrongful acts had been conducted by the defendants which caused their deaths, personal injuries, and property damage.

## CLASS ALLEGATIONS

39. Plaintiffs hereby incorporate paragraphs one (1) through thirty-eight (38) of this Complaint as if fully rewritten herein.

40. The named plaintiffs bring this action pursuant to Civ. R. 23, on behalf of themselves and all other members of the class defined as:

    a. All persons who have died resulting from exposure to PCBs or other toxic substances within the cancer cluster geographic region defined in paragraph 24, above;

    b. All persons who have suffered a personal injury resulting from exposure to PCBs or other toxic substances within the cancer cluster geographic region defined in paragraph 24, above;

    c. All persons and the children of persons who visited or used Whirlpool Park in its recreational capacity between 1953 and 2008; and,

    d. All persons who own property immediately adjacent to or within 4000 feet of Whirlpool Park or any other toxic waste dump site, and within 2000 feet of Grist Mill Creek, Green Creek, or any tributary north of Whirlpool Park or any other tributary flowing out of any other toxic waste dump site.

**Numerosity**

41. The exact numbers of the class previously identified and described is not known but is estimated to be so numerous that joinder of all class members is impracticable. The class consists of no less than thousands of individuals, far in excess of forty (40) members, who

used Whirlpool Park and who own property within the stated radius of the contaminated property and tributaries.

42. A precise determination of the number of class members is only available through information within the exclusive control of the defendants or easily ascertainable from public records.

**Commonality**

43. There are questions of law or fact common to the class, including but not limited to the following:

   a.  Whether defendants negligently, recklessly, or intentionally dumped toxic waste containing PCBs and other hazardous chemicals in a recreational area or other locations and knowingly exposed people and property to these waste dump sites from approximately 1953 through the present;

   b.  Whether defendants' actions of dumping toxic waste without designating or disclosing the site caused property damage to adjacent and nearby properties by causing a diminution in property value; and

   c.  Whether defendants' negligent dumping of toxic waste containing PCBs and other toxic chemicals in a recreational area formerly known as Whirlpool Park, and at other locations, are causing high rates of cancer, particularly in children and young adults, in the cancer cluster region as defined in paragraph 24.

**Typicality**

44. The claims of the plaintiffs are typical of the claims of other members of the putative class. The representative parties' claims arise from the same event or practice or course of conduct that give rise to the claims of the other class members and the claims are based on the same legal theory.

45. The personal injuries of class members as well as the damage to real estate owned by the class members was all damaged in the same way, during the same time period, and this condition presents the same types of damage as to each potential class member.

46. Additionally, the risk of serious harm, injury, and disease to each of the class members was created in the same way, by the same defendants during the same time period, and the risk is typical of each class member.

47. Further, the same toxic molecules threaten each of the putative class members and subject each to the enhanced risk of the same injuries and disease processes. The U.S. EPA provides uniform standards against which to measure the risk of PCB levels and other toxic chemicals at the property affecting the putative class.

**Adequacy of representation**

48. The named plaintiffs will fairly and adequately protect the interests of the class.

49. The named plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other class members.

50. The named plaintiffs' counsel have broad experience in handling class action litigation, including chemical spill class actions, and are fully qualified to prosecute the claims of the class in this case. The named plaintiffs' counsel have successfully litigated major class actions on behalf of thousands of claimants, resulting in substantial compensation to those claimants through both settlements and judgments. Class actions litigated by the named plaintiffs' counsel include classes involving environmental contamination.

**Superiority of Class Action**

51. The questions of law or fact that are common to the class predominate over any questions affecting only individual members. The primary question that will determine defendants' liability to the class is whether defendants negligently dumped toxic materials at the property

in question. That question is common to the class as a whole, and it predominates over any questions affecting only individual class members.

52. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorney's fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense and risk of pursuing their claims individually. Certification of this case pursuant to Civ. R. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

53. This action meets the requirements of Civ. R. 23 because:

    a.  Common questions of law or fact predominate over questions affecting only individual class members;

    b.  Separate actions by individual members of the class against the defendants would create a risk inconsistent or varying adjudications with respect to said class members, and incompatible standards of conduct for the defendants;

    c.  The plaintiffs have no knowledge of any other claims currently pending specifically addressing the issues herein; and

    d.  Separate prosecution of each individual claim against the defendants would create enormous difficulties and expense for the Court, the individual parties, and the public, requiring each individual claimant to establish liability on the part of the defendants resulting in duplicative and unnecessary consumption of judicial and other resources, and which could result in inconsistent discovery and rulings as well as incomplete fact development thereby depriving the ultimate fact-finder of required information.

## COUNT ONE – Wrongful Death

54. Plaintiffs hereby incorporate paragraphs one (1) through fifty-three (53) of this Complaint as if fully rewritten herein.

55. Plaintiff was appointed Administrator of the Estate of Christina Lagrou, deceased, by the Sandusky County Probate Court on October 23, 2006, in Case No. 20061326 and reappointed under the same case number on March 26, 2013. He brings this wrongful death action as personal representative for the exclusive benefit of the surviving spouse, child, parents, and other next of kin of the deceased.

56. Christina Lagrou, age 23, died from Large Cell Lymphoma on October 21, 2006; at the time the cause of her cancer was unknown.

57. Christina Lagrou was survived by her husband, Tim Lagrou, and her minor child, Hayden Lagrou.

58. Christina Lagrou, age 23, had a life expectancy of 78.10 years at the time of her death. Her beneficiaries suffered damages of loss of support from her reasonably expected earning capacity.

59. Decedent's beneficiaries suffered damages for loss of her services over the time she would have lived.

60. Decedent's beneficiaries suffered damages for the loss of her society over her life expectancy, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education.

61. Decedent's heirs at law at the time of her death suffered damages for loss of prospective inheritance.

62. Decedent's beneficiaries suffered damages for the mental anguish caused by her death.

63. Reasonable funeral and burial expenses in the amount of $4,500.00 or more have been incurred.

64. Decedent's death and those of other members of the putative class was caused by defendants' intentional, reckless, or negligent handling and disposal of toxic and hazardous chemicals, including PCBs, for which plaintiff Tim Lagrou claims damages on behalf of his late wife's estate and beneficiaries and those of the class.

65. Defendants' intentional or reckless handling and disposal of toxic and hazardous chemicals, including PCBs, was conducted willfully, wantonly, and maliciously, with a conscious disregard for the lives, health, and property of neighbors and the public including the plaintiffs and members of the class they represent.

## COUNT TWO – Personal Injury

66. Plaintiffs hereby incorporate paragraphs one (1) through sixty-five (65) of this Complaint as if fully rewritten herein.

67. As a direct and proximate result of defendants' intentional, reckless, or negligent handling and disposal of toxic and hazardous chemicals, including PCB's, plaintiffs were caused personal injury, pain, suffering, disability, interference with usual daily activities, out-of-pocket costs, medical testing, medical treatment, and medical expenses.

68. As a direct and proximate result of defendants' intentional, reckless, or negligent handling and disposal of toxic and hazardous chemicals, including PCB's, plaintiff Alex Gill and members of the class have suffered neurological defects and developmental disabilities.

69. Defendants' intentional or reckless handling and disposal of toxic and hazardous chemicals, including PCBs, was conducted willfully, wantonly, and maliciously, with a conscious disregard for the lives, health, and property of neighbors and the public including the plaintiffs and members of the class they represent.

15

## COUNT THREE – Medical Monitoring

70. Plaintiffs hereby incorporate paragraphs one (1) through sixty-nine (69) of this Complaint as if fully rewritten herein.

71. Sampling data has established that the former Whirlpool Park site is contaminated with a black sludge containing a level of PCBs and metals surpassing U.S. EPA standards.

72. PCBs are a known carcinogen and are hazardous to human health and listed in the top 10% of U.S. EPA's most toxic chemicals.

73. Because of the high levels of PCBs, metals, and other toxic chemicals in the environment at Whirlpool Park, plaintiffs and all members of the putative class are at an increased risk of contracting one or more serious and life-threatening or life-ending diseases including, but not limited to:

   a.  Disruption of reproductive functions;

   b.  Neurobehavioral and developmental deficits in newborns continuing through school-aged children who had *in utero* exposure;

   c.  Liver disease, diabetes, and effects on the thyroid and immune system; and

   d.  Increased risk of cancer, including non-Hodgkin's lymphoma.

74. Early detection of the various cancers, other diseases, and developmental abnormalities increases the chances for successful treatment and management of the aforesaid adverse health conditions.  Therefore, it is reasonably necessary for the plaintiffs and those in the putative class within the cancer cluster geographic region defined in paragraph 24, above, to undergo periodic and regular health monitoring and medical examinations different from that which plaintiffs and members of the putative class would otherwise undergo in the normal course of their lives had these toxic exposures not occurred.

75. Medical monitoring procedures exist which make early detection of these adverse medical

16

conditions possible and desirable.

76. Plaintiffs, on behalf of themselves and the putative class members, claim entitlement to medical monitoring at the defendants' cost.

## COUNT FOUR – Damage to Property Interests

77. Plaintiffs hereby incorporate paragraphs one (1) through seventy-six (76) of this Complaint as if fully rewritten herein.

78. Due to the negligent, reckless, or intentional contamination of Whirlpool Park in Green Springs, Ohio, and other locations, the plaintiffs' properties have been damaged. The value of their property has been significantly damaged as it is in the immediate vicinity of the contaminated site and down-stream from said site.

79. The contamination, known health effects, and fear which typically result from high levels of PCBs and other toxic chemicals have decreased plaintiffs' property value.

80. Plaintiffs, on behalf of themselves and the putative class members, claim damages against all defendants for their lost property value.

81. Defendants' intentional or reckless handling and disposal of toxic and hazardous chemicals, including PCBs, was conducted willfully, wantonly, and maliciously, with a conscious disregard for the lives, health, and property of neighbors and the public including the plaintiffs and members of the class they represent.

## COUNT FIVE – Continuing Nuisance – Cleanup Fund

82. Plaintiffs hereby incorporate paragraphs one (1) through eighty-one (81) of this Complaint as if fully rewritten herein.

83. Since 1953 the defendants created and maintained a nuisance on the property known as

Whirlpool Park, and the nuisance continues to this day.

84. Defendant Whirlpool Corporation, through its manufacturing processes, caused to be created toxic chemicals which were dumped at Whirlpool Park.

85. The toxic chemicals have escaped from Whirlpool Park to the lands and property of the representative propertied plaintiffs and to the lands of the class of propertied plaintiffs. Propertied plaintiffs allege that the defendants intended to cause the formation of these toxic chemicals and that the defendants intended the chemicals to escape to the lands of the representative propertied plaintiffs and to the lands of the putative class of propertied plaintiffs.

86. Because the defendants knew or should have known that their conduct in producing and dumping the toxic chemicals and allowing them to escape the undisclosed dump site, defendants should have known that the dump site was and continues to cause a substantial and unreasonable interference with the propertied plaintiffs' interests in the use and safe enjoyment of their respective real estate.

87. The gravity of the harm to the propertied plaintiffs and the putative class members outweighs the social value of the defendants' activity in their past production and in their present maintaining of toxic chemicals on the contaminated dumping site.

88. As a direct and proximate cause of the defendants' invasion of the plaintiffs' property with toxic chemicals the plaintiffs' interest in the respective real estate has been injured in the following ways:

    a. diminution in property value due to the toxic chemical dumping site;

    b. cleanup costs associated with the decontamination of their respective properties;

    c. annoyance, discomfort, and inconvenience due to the invasion of toxic chemicals onto their property;

   d.  emotional distress and emotional injuries related to the harm caused by the toxic chemicals;

   e.  physical harm and discomfort due to the invasion of toxic chemicals onto plaintiffs' property; and,

   f.  wrongful death due to the invasion of toxic chemicals onto plaintiffs' property.

89. Defendants' intentional or reckless handling and disposal of toxic and hazardous chemicals, including PCBs, was conducted willfully, wantonly, and maliciously, with a conscious disregard for the lives, health, and property of neighbors and the public including the plaintiffs and members of the class they represent.

90. Plaintiffs, on behalf of themselves and the putative class members, claim entitlement to a thorough clean-up and remediation of Whirlpool Park and all affected areas at the defendants' cost.

### COUNT SIX – Strict Liability

91. Plaintiffs hereby incorporate paragraphs one (1) through ninety (90) of this Complaint as if fully rewritten herein.

92. All representative plaintiffs allege on behalf of all putative class members that, irrespective of intent or negligence, defendants' operations at the Whirlpool Park site are and have been abnormally dangerous.

93. PCBs and the other toxic chemicals found at Whirlpool Park are abnormally dangerous, and their production and use in manufacturing are abnormally dangerous activities.

94. Maintaining, storing, and disposing of PCBs and other toxic chemicals and property contaminated with PCBs are abnormally dangerous activities.

95. Defendants by choosing to use, produce, maintain, store, and dispose of PCBs and other

toxic chemicals at their various manufacturing plants and dumping sites chose to create an abnormally dangerous instrumentality and are strictly liable without a showing of negligence for any injury proximately caused to the plaintiffs and the members of the putative class by that instrumentality.

96. As a direct and proximate result of defendants' activities as mentioned above, but not limited thereto, poisonous and toxic chemicals invaded the persons and property of plaintiffs and have damaged their personal and property interests as set forth above.

97. Plaintiffs, on behalf of themselves and the putative class members, claim damages and medical monitoring from defendants as previously set forth above.

## PRAYER FOR RELIEF

**WHEREFORE,** the representative plaintiffs, on behalf of the putative class, respectfully pray this honorable Court grant them the following relief:

a. Certify this case as a class action pursuant to Civ. R. 23 on behalf of the named plaintiffs and other members of the class;

b. Enter judgment against defendants and in favor of the named plaintiffs and other class members;

c. Award compensatory damages to the named plaintiffs and other class members to which they are entitled in excess of $25,000.00 each, together with interest thereon at the maximum rate allowable by law;

d. Award punitive damages to the named plaintiffs and other class members to which they are entitled in the aggregate amount of $750 Million;

e. Create a medical monitoring fund for the class at an amount sufficient to provide for testing of their persons to determine body burden of PCBs and other toxic chemicals

in an amount sufficient to ensure ongoing examinations and tests to provide for early detection of disease related to exposure to toxic waste;

f.  Create a cleanup fund for the class at an amount sufficient to provide for the decontamination of the dump site, real estate, and public property invaded and contaminated by the toxic chemicals; and

g.  Grant plaintiffs their costs and litigation expenses, reasonable attorney fees, and such further relief as the Court deems just or equitable.

Respectfully submitted,

Joseph F. Albrechta (0008478)
John A. Coble (0016445)
ALBRECHTA & COBLE, Ltd.
2228 Hayes Avenue, Suite A
Fremont, Ohio 43420
(419) 332-9999 Telephone
(419) 333-8147 Facsimile
jalbrechta@lawyer-ac.com
Counsel for Plaintiffs

## JURY DEMAND

The plaintiffs hereby demand a trial by jury of any and all issues so triable herein.

Counsel for Plaintiffs

21

## PRAECIPE

To the Clerk:

Please be so kind as to serve defendants Whirlpool Corporation and Grist Mill Creek, LLC with Summonses and copies of the Complaint herein at their addresses as shown on the caption hereof by Certified U.S. Mail, return receipt requested, or by other means in accord with the Ohio Rules of Civil Procedure.

Thank you very much.

Counsel for Plaintiffs

13CV306

SUMMON
3/29/2013

# SANDUSKY COUNTY CLERK OF COURTS
100 NORTH PARK AVE., SUITE 320
FREMONT, OH 43420
(419) 334-6161
## SUMMONS ON COMPLAINT

TIM LAGROU
2143 CROGHAN STREET
FREMONT, OH 43420

PLAINTIFF(S)

VS

FILE COPY

CASE NUMBER:    13CV306

LAGROU, TIM VS WHIRLPOOL CORPORATION

DEFENDANT(S)

TO THE ABOVE NAMED DEFENDANT:

You have been named a defendant in a complaint filed in the SANDUSKY COUNTY COMMON PLEAS COURT, 100 NORTH PARK AVE., SUITE 320, FREMONT, OH 43420.

A copy of the complaint is attached.

You are required to appear and defend this action by serving an answer to the complaint on the Plaintiff's attorney or on the Plaintiff if he has no attorney.  Your answer must be served within twenty-eight (28) days after the service of this summons.  A copy of your answer must be also filed with this court within three (3) days after service on the Plaintiff's attorney or the Plaintiff.

The Plaintiff's attorney is:

JOSEPH F. ALBRECHTA ESQ.
2228 HAYES AVENUE STE A
FREMONT, OH 43420
PHONE: 419332-9999
FAX: (419) 333-8147

Failure to appear and defend this action will result in a judgment by default being taken against you for the relief demanded in the attached complaint.

**TRACY M. OVERMYER**
**CLERK OF COURTS**
By: _____ DATE: 3/29/2013
Deputy Clerk

(Rule 4 - 1970 Ohio Rules of Civil Procedure)



802336



English        Customer Service        USPS Mobile        Register / Sign In

# USPS.COM

Search USPS.com or Track Packages

Quick Tools        Ship a Package        Send Mail        Manage Your Mail        Shop        Business Solutions

## Track & Confirm

GET EMAIL UPDATES        PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 71969008911180728691 | | Delivered | April 05, 2013, 12:03 pm | FREMONT, OH 43420 | Certified Mail™ Return Receipt Electronic |
| | | Notice Left | April 04, 2013, 12:51 pm | FREMONT, OH 43420 | |
| | | Depart USPS Sort Facility | April 04, 2013 | TOLEDO, OH 43601 | |
| | | Processed through USPS Sort Facility | April 04, 2013, 2:12 am | TOLEDO, OH 43601 | |

Check on Another Item

What's your label (or receipt) number?

Find

7196 9008 9111 8072 9684

**TO:**

13CV306

WHIRLPOOL CORPORATION

C/O CSC-LAWYERS INCORPORATING SERVICES (CO

50 WEST BROAD STREET, SUITE 1800

COLUMBUS, OH 43215

**SENDER:**    *TRACY M. OVERMYER*

SANDUSKY COUNTY CLERK OF COURTS
**REFERENCE:**

13CV306

LAGROU, TIM VS WHIRLPOOL CORPORATION

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | |
|---|---|---|
| | Certified Fee | |
| | Return Receipt Fee | |
| | Restricted Delivery | |
| | Total Postage & Fees | 10.00 |

**USPS®**

**Receipt for Certified Mail™**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

3/28/13

---

2. Article Number

7196 9008 9111 8072 9684

| A. Received by (Please Print Clearly) | B. Date of Delivery |
|---|---|
| APR 03 2013 | |

C. Signature

X    Deanna Kessler    ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type  **CERTIFIED MAIL™**

4. Restricted Delivery? *(Extra Fee)*  ☐ Yes

1. Article Addressed to:

13CV306                          LAGROU, TIM VS WHIRLPOOL CORPORATION

WHIRLPOOL CORPORATION

C/O CSC-LAWYERS INCORPORATING SERVICES (CORPO

50 WEST BROAD STREET, SUITE 1800

COLUMBUS, OH 43215

13CV306                                        TRACY M. OVERMYER

PS Form 3811, January 2005          Domestic Return Receipt